## Advent Drilling, Inc.
### v.
## Bituminous Casualty Corp.
*[Cite as 4 AOA 143]*

*Case No. CA-7930*
*Stark County, (5th)*
*Decided June 18, 1990*

*Thomas W. Connors, Black, McCuskey, Souers & Arbaugh, 1000 United Bank Plaza, 220 Market Avenue South, Canton, OH 44702, for Plaintiff-Appellant.*

*Philip E. Howes, Stephen Belden, Vogelgesang, Howes, Lindamood & Brunn, 500 Mellett Bldg., P.O. Box 20870, Canton, OH 44701-0870, for Defendant-Appellee.*

PUTMAN, P.J.

This is an appeal from the judgment of the Court of Common Pleas of Stark County, Ohio entered in favor of defendant-appellee Bituminous Casualty Corporation (Bituminous), and against plaintiff-appellant Advent Drilling, Inc. (Advent), upon Advent's complaint for breach of an insurance contract and bad faith failure to pay a claim. The trial court made written findings of fact and conclusions of law (a copy of which is attached to this opinion) and entered its judgment concluding that the contract of insurance between Advent and Bituminous does not provide insurance coverage for claimed losses incurred by Advent while Advent was drilling oil and gas wells pursuant to its contract with Capital Oil & Gas, Inc. (Capital). Advent now seeks our review and assigns the following as error:

"*ASSIGNMENT OF ERROR NO. I.*
"THE TRIAL COURT ERRED BY DENYING APPELLANT A JURY TRIAL ON ISSUES OR FACT, DESPITE APPELLANT'S DEMAND FOR A JURY TRIAL ON ALL ISSUES OF FACT.

"*ASSIGNMENT OF ERROR NO. II.*
"THE TRIAL COURT ERRED BY CONSTRUING APPELLANT'S INSURANCE POLICY AS NOT PROVIDING COVERAGE FOR APPELLANT'S LIABILITY FOR DAMAGE TO OIL WELL CASING.

"*ASSIGNMENT OF ERROR NO. III.*
"THE TRIAL COURT ERRED BY CONSTRUING APPELLANT'S INSURANCE POLICY AS NOT PROVIDING COVERAGE FOR APPELLANT'S LIABILITY FOR DAMAGE TO AN OIL WELL HOLE."

For the reason stated below, Advent's assignment of error are overruled.

Advent is an Ohio corporation engaged in the business of drilling oil and gas wells. Advent entered into a contract with Capital whereby Advent would drill six wells in search of oil or

gas at sites designated by Capital. Advent was paid in advance for the six wells that it had contracted to drill. Advent's right to retain the pre-payment was conditioned on its completed drilling of the six wells. Capital was to provide the well casing to be installed in the well by Advent.

Pursuant to the contract, Advent began to drill a well known as Luchette No. 1, Luchette being the owner of the property where the well was drilled. On February 22 1988, while Advent was in the process of drilling Luchette No. 1, a fire occurred in the well hole. The fire caused the hole to cave in, destroying the casing and equipment in the hole. Paragraph nineteen of the contract between Advent and Capital provided that Advent would bear the expense of drilling holes that were abandoned for reasons associated with the drilling operation. The contract also provided that where holes were abandoned before completion, and casing or material supplied by Capital was damaged by the negligence of Advent, Advent would replace the casing and material.

Advent paid Capital for the casing that Capital had supplied and was damaged by the fire. Because the well hole at Luchette No. 1 had not been drilled to the contract specifications, Advent drilled Luchette No 1a to satisfy its contractual obligation to drill six well holes.

Advent filed a claim with its insurer, Bituminous, seeking to recover labor and material expenses that it incurred in drilling, plugging, and abandoning Luchette No. 1. Advent also sought to recover its costs in drilling Luchette No. 1a.

At the time of the fire in Luchette No. 1, Advent had a "Special Multi-Peril Policy" with Bituminous. Advent claims coverage for its losses under two provisions of this policy. Advent claimed that its losses were covered under the "Underground Resources and Equipment Endorsement" and the "Contractual Liability Coverage" contained in the Broad Form Comprehensive General Liability Endorsement. Both of these endorsements modify certain provisions of the Comprehensive General Liability Insurance portions of the policy.

Bituminous denied Advent's claim for coverage. Advent filed a complaint against Bituminous for breach of an insurance contract and bad faith failure to pay a claim.

Prior to trial, Bituminous moved to bifurcate the issue of construction of the insurance contract from the remaining issues. The trial court sustained the motion and ordered that it try the issue of the construction of the insurance policy with the remaining issues to remain for a jury trial.

We now turn to a serial consideration of the separate assignments of error.

I

By its first assignment of error, Advent argues that the trial court erred by denying Advent a jury trial on the bifurcated issue of Advent's right to coverage under its insurance policy with Bituminous when there were questions of fact as to whether or not such coverage existed. Advent further argues that it was entitled to a jury trial pursuant to R.C. 2311.04 that provides:

". . . Issues of fact arising in actions for the recovery of money only, or specific real or person property, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure."

The matter at issue in the first phase of the bifurcated trial was construction of the insurance policy to determine Bituminous's obligations to Advent under the policy, and did not involve a claim for the recovery of money. It is within the province of the trial court to ascertain the facts necessary to construe on insurance policy and determine the insurer's obligations to the insured. *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380; *Travelers Indemnity Co. v. Cochrane* (1951), 155 Ohio St. 305. Thus, the matter of the construction of the insurance policy was properly heard by the trial court and the trial court did not err in making the findings of fact necessary to construe the insurance policy. Furthermore, a careful review of the record indicates that all of the matters that Advent argues were disputed questions of fact to be decided by a jury were decided in Advent's favor by the trial court. Bituminous presented no witnesses to refute the testimony presented by Advent. Even after Advent had presented unrefuted testimony, the trial court found no coverage under the policy. Advent was not prejudiced by the trial court's refusal to grant a jury trial on the issue of coverage since the trial court accepted the facts as presented by Advent.

Accordingly, Advent's first assignment of error is overruled.

II.

By its second assignment of error, Advent argues that the policy was ambiguous with respect to damage to oil well casing because of a

conflict between Section VI of Endorsement 13 and Endorsement D, the Underground Resources and Equipment Endorsement. Advent contends that the trial court should have found coverage for the damaged oil well casing because of this alleged ambiguity.

Section VI of Endorsement 13 reads:

"VI. BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE (Including Completed Operations)"

The insurance for property damage liability applies, subject to the following additional provisions:

"(A) Exclusions (k) and (o) are replaced by the following:

" . . .

"(2) except with respect to liability under a written sidetrack agreement or the use of elevators.

" . . .

"(c) to property in the custody of the insured which is to be installed, erected or used in construction by the insured.

"(d) to that particular part of any property, not on premises owned by or rented to the insured.

"(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations. . ."

The Underground Resources and Equipment Endorsement reads as follows:

With respect to operations shown in the Schedule:

"1. This insurance does not apply to:

"a. 'Property damage' included within the 'underground resources and equipment hazard;' or . . .

"2. 'Underground resources and equipment hazard' includes 'property damage' to any of the following:

"b. Any well. hole, formation, strata, or area in or through which exploration for or production of any substance is carried on; or

"c. Any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water."

Bituminous denied coverage for the claim to the damage well casing under Section VI(A)(2)(c) or Endorsement 13. The trail court concurred and also found that coverage for damage to the oil well casing was excluded under Section VI(A)(2)(d)(i) of Endorsement 13. Advent argues that these liability exclusions conflict with the Underground Resources and Equipment Endorsement so as to create an ambiguity in the policy. Furthermore, Advent argues that it paid Bituminous a premium to have the Underground Resources and Equipment Endorsement exclusions removed from the policy.

The trial court's Conclusions of Law No. 2 and 3 are clearly supported by the record in this case. The provisions of the policy under which Advent claimed coverage are within the *liability* provisions of the policy. The liability provisions of the policy do not apply to the losses that Advent incurred when it had to plug Luchette No. 1 and drill Luchette No.1a because those are Advent's *own* losses, and not losses sustained by a third party for which Advent was liable. The insuring words of the policy only make Bituminous obligated to indemnify Advent for Advent's liability to a third party, and not for losses sustained by Advent.

Furthermore, even though Advent paid an additional premium to obtain an endorsement to remove additional exclusions of coverage for liability for damage to a third party's underground resources and equipment, liability coverage under the endorsement was still subject to the exclusion in Section VI of Endorsement 13.

Accordingly, Advent's second assignment of error is overruled.

### III.

By its third assignment of error, Advent argues that the trial court erred in not allowing coverage for its losses under the "Contractual Liability Coverage" provision of the policy. This provision excludes coverage for liability assumed by the insured under any contract, unless the contract qualifies as an "incidental contract." "Incidental contract" is defined in the policy as follows:

"(A) The definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business."

Advent argues that because it was required under its contract with Capital to bear the expense of any failed attempts to perform its obligation to drill the six well holes, Advent "assumed liability" under the contract for drilling a seventh well hole.

There is record support for the trial court's Conclusions of Law No. 6. The "Contract Liability Coverage" provision of the policy provides coverage only for property damage liability

assumed by the insured under a contract, and not for expenses arising out of the performance of the contract. Advent's expenses in drilling a seventh well hole in order to discharge its obligations under the contract was an expense of performance, not an assumption of liability.

Accordingly, Advent's third assignment of error is overruled.

For the foregoing reasons, Advent's three assignments of error are overruled, and the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.

*Judgment affirmed.*

HOFFMAN, J., and GWIN, J., concur.